Mr. Judge, what a great name. I don't know if I was cut out to be a lawyer by name or not. Good afternoon, your honor. It's destiny for you. Thank you. And counsel, please, the court. My name is Jay Judge. I'm the attorney for the plaintiff, Apollon American Economy Insurance Company, who has denied coverage in this case, filed a complaint for declaratory judgment. I'm going to try to highlight three issues. I know it's been a long day. I'm going to try to be enlightening and brief if that's possible. One, this is an insurance coverage case, and American Economy says when we look at the facts pleaded in the complaint, you have to take the complaint, assume the plaintiff will prove what she says she's going to prove. If there's coverage, you owe a defense. If there's potential coverage, you owe a defense. If there's not, you don't. There's three exclusions that are applicable in this case. The employment-related practices exclusion, and something unusual. This is the 2006 edition of this endorsement. And I'll come back to that in a minute. But it's in the record at page 101. And when you look at the bottom, it says ISO Properties, Inc., 2006. That's important, because the cases the trial court relied upon did not. They were 2001 and 2002 cases. They didn't have this endorsement. When we started out this case, I really thought that the courts in both cases omitted the language from the endorsement. Because I'm sitting there looking at the endorsement and it has this language. It says this applies to defamation, humiliation, and embarrassment or harassment. That applies before employment, after employment, or during employment. And I thought, well, they just omitted that language. Later, I went back and I looked at the dates, and I realized that that language wasn't in the policies they decided. So the second thing that we're going to argue, the first thing is going to be what the policy says, the 2006 employment-related practices endorsement shows no coverage, and I'll explain why. The second thing is, I think the trial court made an error. She followed the 12-12 restaurant, American Alliance Insurance Company versus 12-12 restaurant. And that case said, this employment-related practices endorsement does not apply unless this is job performance related. Well, when you read that endorsement, there's no wording like that at all. I believe she got that from five California cases who started a two-pronged test, and she picked that up. This was not employment-related. And just so that you can look at it later, here's what American Alliance versus 12-12 said in finding no coverage under this endorsement. The content of these statements was not about Alexander's work performance, and therefore, they do not fall within the purview of the exclusion. So the court said, look, if this is not your work performance, you get coverage. It's only excluded if they talk about defame you or humiliate you or harass you in your work performance. The second thing is, all of these actions were employment-related. So I mean, that's the third argument that we're going to make. The Haley Mansion defendant says, well, it's not employment-related, because the statements don't deal about her employment. And the defamation, and basically when you read this endorsement, you'll see it covers defamation, humiliation, and harassment. When you read her counterclaim, she says she was sexually harassed, as other females were sexually harassed. She was humiliated, and she was called six words. And we set them all out in the brief. The big word that they made the big deal about is the C word, and that word couldn't be more humiliating to women than any other word that you could find. And that's what they're calling her. That's defamation. It's also humiliation. Both of them are not covered. And the counterclaim that she makes against them says they maliciously made false statements. Okay, so they did it maliciously. The defendants knew they were false and made them with reckless disregard. Now, there's a couple of Illinois cases which, I mean, I'm not an appellate judge, so I can't say they're wrong, but I think they missed the boat. They say if you plead actual malice, the Supreme Court in Middleman v. Wittes said actual malice means knowledge of falsity or reckless disregard of falsity. I think it's the same thing. And the Supreme Court in Middleman is saying it's the same thing. Reckless disregard is saying, you know what, I know this is very probably false, but I don't care. I'm saying it anyway. That's knowledge. And insurance companies don't provide insurance to cover intentional conduct. So if you're going to go ahead and say, yeah, I know this is probably false, I'm going to say it anyway. You're not going to get covered for that. They said it was blatantly false and with actual malice. And I did define it, I think, in my reply brief from Aetna Casualty v. Fryer. Actual malice means, and I started in the main brief with Black's Dictionary, but it means intentional conduct. Actual malice means I intend to do what I'm doing. And two, it means I intend to hurt you. There's an evil motive behind what I'm doing. So when she says they did this to hurt her, and when you read that whole counterclaim, it's pretty clear they set out to ruin her. And I know there's allegations whether she called the police or something. One of the things I see in that is, you know what, she calls the police and says they're doing those things, so now they tell the police and everybody, you can't believe this woman, she's not believable. So for those reasons, those are the main grounds for which there's no coverage. The appellate court relied on American Alliance v. 1212. And this is an employee who was fired from a restaurant, and he's called a faggot, a gimp, a homo, and stuff like that. And the question was, is this within the employment practice's exclusion? And the appellate court said, well, it's not about his job. This is not about his job. These are personal comments to him personally. Well, that's not what the exclusion says. If you look at the exclusion, I'm sure you will, the exclusion says this insurance does not apply to defamation, and humiliation would be included, harassment. If it arises out of, okay, it doesn't say defamation personal or any defamation. If it arises out of, meaning if it stems from, if it originates from, if there's something employment related that it comes out of, okay, and if that employment relationship, and the employment relationship has to be either before employment, so that means it doesn't have to be work performance. I mean, before employment, you're not even employed, so it isn't work performance. During employment, or after employment, in the case of Moberg, it's after employment. So when they say these things about her after she's terminated, that falls directly within the exclusion, and the insurance company had no duty to defend. And she pleads it herself in her complaint. If you look at the first paragraph of the counter complaint, it says this involves employment rights violations during and after employment. Paragraph 36 says, after I was terminated, they called me these six names, all of these names, and the only relationship, when you say, what does this employment relationship or employment mean? Well, it doesn't mean anything other than if it's before, during, or after. Employment relationship means whatever this thing is, defamation, it comes out of them being together in an employer-employee situation, either pre-employment, on your application you apply, or after employment. So it only means there's some kind of relation having to do with employment. It doesn't mean the defamation has to be employment related, and when you read the exclusion, it doesn't say the defamation, any defamation. It doesn't matter if it's personal or if it's business, if it stems out of this employment. That's the only relationship she had. She worked for them for 12 months as a general manager. There's no other relationship. They're not like her and Haley Manchin or Jeffrey Bussien are not best friends, they're not like lovers, they're not relatives, they're not other associates doing social things together. The only relationship is two months of business relationship, and all these things he called her are because she worked for him, and these are what he thinks about her. He does not like her, obviously, and he wants to hurt her as bad as he can, so he's saying all the meanest things he can think of, and he's defaming her, and he's telling other employees, former employees, police department. So I think there's no coverage because of that. I think when you look at the case law and you look at the two cases, and we relied on the West Bend Mutual case versus Rosemont Exposition, excuse me, this is the husband and wife, they're working as riggers. They put up different rigging and stuff for shows at the Rosemont Exposition Center, and Rosemont says, you know what, I don't want these people. It sends a letter to their union, says we don't want these people anymore. The wife's making a phony worker's comp claim and her husband's a witness to us. We don't want them. Don't send unions, don't send these anymore. They sued for defamation. The insurance company denied unemployment-related practices exclusion, but the plaintiffs came and said, well, wait a minute, this wasn't employment-related. They're not saying we did anything wrong while we're employed. They're saying we're making a fake workers' comp claim, so we get coverage. This is not outside the coverage. The First District Appellate Court Justice Gordon wrote an opinion, and he said, look, they're relying on 12-12. They're saying it has to be work performance related. That's what 12-12 restaurant said. That's not true. There's no words like that in the endorsement. It's not true. It just has to have some relationship to employment. In this case, it's termination, because the letter got them fired, so they're terminated. So, and I think if you look at the 2006 endorsement with this language, before, during, and after, so this applies to defamation that occurs before employment, during employment, after employment. When you look at that, it's clear she's pleaded into it. I know I'm getting short, so I want to make just two points. There's two other exclusions we rely on. And the case law is all over, and again, you don't want to sound like you're pompous because you think a case is, you're smarter than the judges who wrote it. I'm sure they're all smarter, and I hope to be. But there's two violations, knowing violation of the rights of another, and when you look at this complaint, you know, Moberg is saying they knew what they were doing, and they did this intentionally. And the other is, material published with knowledge of falsity. They made, Haley Manchin made these statements. They knew they were false, malicious, actual malice. Now, the courts looked at that, and they said two things, basically, and this is really short-circuiting it, but one of the things, and Justice Campbell said it in the First District Appellate Court in the St. Paul Insurance Company v. Omaha, he said, look, actual malice means knowing violation or reckless disregard of falsity. And he said, you know what, they're the same thing. And when you go and sue somebody for defamation, you don't have to prove they did it intentionally. You just have to prove that you said something false about them. So it doesn't matter if you did it with reckless disregard. Even reckless disregard, meaning, I know this is probably false, but I'm doing it anyway. Well, it doesn't matter, because all you have to do is prove you defamed them. And I don't think that's the law. I mean, I think you have to look. He's basically looking, what do you have to prove? When you do the duty to defend, you look at the complaint. Reckless disregard does not mean what you're saying it is. I know that probably. Reckless disregard means that you have reckless disregard for the truth of the false appeal. You don't check it out. It doesn't mean you intentionally, I think it is. Okay. I just want to clarify. No, I mean, I accept that. But what I'm saying is you have to look at the complaint to decide the duty to defend. And I think in St. Paul, when they said, well, look, they pleaded reckless disregard, and they don't have to prove intentional act for defamation, so even if they pleaded outside of coverage, it doesn't matter, because they don't have to prove it. And I'm saying, no, no. You look at the complaint. If the complaint pleads these facts, that they intentionally defamed her with actual malice, you have to accept that that's what the plaintiff's going to prove. It doesn't matter whether she has to or doesn't. That's it. So that's why. I'm sorry. Two or one. Thank you. Okay. Sorry. And I cited the end of Casualty v. Friar and actual malice, so again, I mean, nobody has the answers to all these things, you try to figure them out as much as you can. I tried to read the cases. Seventh Circuit, Jess Posner wrote, Cincinnati v. Eastern Atlantic. He's like a genius, University of Chicago and all this stuff. But in there, he says, well, wait a minute, if you look at this, yeah, they pleaded outside the coverage for defamation, but they were pleading it for punitive damages. So the only reason they were pleading this was to get punitive damages. So it really doesn't matter. There's going to be coverage. And it's not what the law is. The law is what you plead is what you have to assume will be proven. And if they plead something for punitive damages, you assume that will be proven. And there's no coverage. And the last thing I'd like to say in my minute or so is, you know what, everybody looks at insurance companies, because we all feel when we have an accident, we should be covered. And you have to look at the insurance contract to see if you are covered. Not everything is covered. I had some guy who burned down somebody else's house, and he said, well, my insurance should cover that. I said, well, you can't go out and burn down the guy's house and get coverage. So I think insurance companies, most of them, I'm not saying all of them, try to be fair. And when you look at this complaint and look at the facts, what's pleaded, he's not entitled. Haley Mansion is not entitled to coverage. He intentionally did all this stuff, and there's no excuse for that. And it shouldn't be picked up. The one case I cited was the pineapple case, where the court said, look, you know, you don't get insurance. It's not a get out of jail free card. You can just go out and blithely do intentional stuff, and the insurance company will come and pay for you. So with that, I would ask that, respectfully, that the trial court be reversed. And I point out, I'm not picking on the trial judge, because I don't think she had this 2006 amendment. We've raised the before, during, and after, but we didn't know, I didn't figure it out until I'm doing the reply brief, that these cases were older and the language wasn't in there. So she didn't get a chance to consider our endorsement as it is now. Thank you very much. Thank you. Mr. Fitzgerald? Mr. Judge fulfilled the promise to be brief and entertaining. I'm anxious to hear what you will promise to do. Thank you, Your Honor, and I don't know that I will be entertaining, but I will endeavor to be brief. Brevity is not required. Thank you, Your Honor. May it please the court, counsel, I would like to go straight to page 101 of the common law record, which contains the employment-related practices exclusion on which the insurance company primarily relies. And this really is a case in which an insurance company is trying to avoid its duty to defend by trying to rewrite an exclusion after the fact. If you look at the exclusion, it says, this insurance does not apply to personal and advertising injury to a person arising out of one of three things. Refusal to employ that person, that's part A. Part B, termination of that person's employment. Or C, employment-related practices, policies, acts, or omissions. And then in part C, there is a list of torts which may be employment-related. And I would argue, and this is what the Illinois Appellate Court has found in the two cases that have interpreted this exclusion, one of these torts or allegations of one of these torts could fall within the scope of this exclusion if it is an employment-related practice, policy, act, or omission. In the briefs filed before this court and in oral argument, counsel asks, there is this limitation that the defamation must be employment-related or it must be an employment-related practice. Where did that limitation come from? Well, it's very simple. It comes from the policy itself. It comes from the exclusion itself in subpart C. Defamation or allegations of defamation could fall within the scope of this exclusion if they are employment-related. And indeed, that's why the Appellate Court in the 1212 Restaurant case and in the West Bend case, which the insurance company relies here, in both of those cases, the relevant analysis is, was the defamatory statement alleged by the underlying plaintiff employment-related? And the Appellate Court has held in these two cases that a defamatory statement about an employee may be employment-related and therefore may fall within the scope of this exclusion if it refers to the employee's job performance or if the defamatory statement is offered as an explanation or a justification for the employee's termination. So that is where this limiting language comes from, employment-related. It's in subpart C, subpart 1C of the exclusion on which the insurance company relies. Counsel tries to make a distinction based on the fact that this exclusion, or at least this version of the exclusion, originates from 2006. That was an argument that was not presented to the circuit court and so it has been waived, but even if it weren't waived, it would still be incorrect. The only difference in policy language that counsel points to is in subpart 1 near the bottom of the page, in the bottom of the right-hand column. This exclusion applies, one, whether the injury-causing event described in paragraphs A, B, or C above occurs before employment, during employment, or after employment of that person. Counsel omitted the opening phrase, the injury-causing event described in paragraphs A, B, or C above. So before you even get to this part 1 below, conduct has to fit within one of these three categories, A, B, or C. We have to be talking about injury that arises out of the refusal to employ someone, someone's termination, or some other practice that is employment-related. If it doesn't meet one of those three standards, then you don't even get to the language here in subpart 1. For that reason, I would argue that counsel's argument is misplaced. The defamatory statement still has to be employment-related. I would like to, and by the way, if the employer in this case, if the insurance company in this case wanted to exclude coverage for any and all defamation claims by current or former employees, it could have done so. It could have drafted a defamation exclusion or an employee tort exclusion. It could have used some clear language to exclude coverage for any and all defamation claims by employees. It chose not to do so. And the insurance company's argument in this case, that the employment-related practices exclusion bars coverage for all defamation claims by employees, simply is not the law. And the fact that this version of the exclusion originates from 2006 simply has no bearing on that fact. The key inquiry remains, is the alleged defamatory statement employment-related. And so I'd like to talk about what Ms. Malberg alleges in her counterclaim. Within the four corners of her counterclaim, specifically paragraph 36 of her counterclaim, on page 924 of the common law record, Ms. Malberg alleges that the following statements were defamatory. That she was mentally unstable. That she was incompetent. That she was untrustworthy. That she was a C-word. That she coerced others to act. That she engaged in criminal activity. And that she was a dishonorable woman. Ms. Malberg alleges that these statements, quote, imputed a want of integrity and chastity. Most, if not all of these statements, simply have nothing to do with employment. Most obviously, the statement, the alleged statement that Ms. Malberg was a C-word or that she was a dishonorable woman. And certainly to the extent Ms. Malberg alleges that the defamation maligned her chastity, it simply is not employment-related. And so because most, if not all of the defamatory statements that Ms. Malberg alleges simply are not employment-related, there is a possibility of a covered claim and therefore there is a duty to defend it. And this case falls squarely within the holding of the 12-12 restaurant case that is discussed in the briefs. In that case, the employee alleged that two of his supervisors made multiple defamatory statements about him. One of the statements that the employee alleged arguably related to his employment. He alleged that his supervisors falsely accused him of stealing money from the restaurant. Arguably that was employment-related. But that was not all that he alleged. He also based his defamation claim on slurs, anti-gay slurs. He also based his defamation claim on purportedly defamatory statements about his sex life, statements to the effect that he had a sexual relationship with another man. And the appellate court correctly held that at least some of the defamatory statements alleged by the employee, those that related to his sex life, those that were personal insults or anti-gay slurs, they were not employment-related. They did not relate to his job performance at all. And therefore, the insurance company in that case had a duty to defend. Likewise in this case. At least some, if not all, of the allegedly defamatory statements in this case were personal insults. Ms. Mohlberg alleges that her chastity was malign. She alleges that one of the defamatory statements was a slur, much like the employee in 12-12 restaurant group who based his defamation claim in part on anti-gay slurs. The case law is clear in both 12-12 restaurant group and in West Bend. If an employee's defamation claim is based even in part on personal insults, sexual statements, or slurs, the employment-related practices exclusion simply does not apply and the insurance company has a duty to defend. The insurance company in this case relies upon the West Bend case, which is clearly distinguishable. In that case, an employer wrote a letter to the union to which two employees belong. And in that letter, the employer said, do not send these two employees to my place of business anymore because they are involved with a fraudulent workers' compensation claim. And the appellate court held that because in that case the allegedly defamatory statement was made as an explanation or justification for an employee's termination, the employment-related practices exclusion applied. But in West Bend, the appellate court specifically stated that it did not disagree with the holding of 12-12 restaurant group. This is at 378 Illinois Appellate 3rd, 489. Quote, in any event, we do not disagree with the court's conclusion in 12-12 restaurant that the alleged defamatory statements regarding Alexander's sexuality were not related to his employment. And so West Bend is easily distinguishable from the facts of this case and there is no inconsistency whatsoever between the West Bend decision and the 12-12 restaurant group decision. I would like to address the two other exclusions on which the insurance company relies. Of course, before I do so, I'd be happy to answer any questions the panel may have on the first exclusion. But one point I want to make absolutely clear is that the insurance company in this case is arguing that any defamation claim is covered by the employment-related practices exclusion. That position is squarely contrary to two decisions of our appellate court and it is also contrary to the plan language of the employment-related practices exclusion. It is simply too late for the insurance company to rewrite its insurance policy. The remaining two exclusions I can address very briefly. The exclusions for the knowing violation of the rights of another and for material published with knowledge of its falsity. Those two exclusions are inapplicable for the same reason. In paragraph 41 of her counterclaim, page 924 of the common law record, Ms. Malberg alleges, quote, defendants knew that these statements were false or acted with reckless disregard of the falsity of these statements. Because Ms. Malberg alleges in the alternative that the defamatory statements that she alleges were made out of reckless disregard, she could prevail at trial on a theory of reckless disregard without having to prove that any of the defendants knew that their statements were false. And counsel's attempt to equate actual malice in defamation law with actual knowledge is simply not the law. And we rely upon two Illinois appellate court cases in our brief that have squarely rejected the argument. Those cases are the St. Paul case and also the Cincinnati insurance case, both of which apply these same exclusions to defamation cases, and both of which recognize the uncontroversial proposition that in defamation law, actual malice does not mean actual knowledge. Counsel referred to the Middleman case, and as we pointed out in our brief, counsel overlooked other language in the Middleman case, specifically 135 Illinois 2nd at 237 to 38, the Illinois Supreme Court held given our holding above, Middleman must plead and prove that the statement in question was made with knowledge of its falsity or in reckless disregard of whether it was false or true. So again, reckless disregard in defamation law does not equate actual knowledge. Counsel's attempt to argue otherwise is simply contradicted by controlling case law. And for all of those reasons, for all of those reasons, we believe that Judge Petrangaro's orders were absolutely correct and should be affirmed, and we believe that the insurance company should be held to the policy that it drafted and sold to its insurance. I would be happy to answer any questions that the panel may have. There are none. Thank you very much. You were very eloquent, and we appreciate that. Thank you. Mr. Judge? And just backwards, counsel ended with saying it pleaded reckless disregard, so the exclusion isn't out. Look, we're looking at the complaint. What is pleaded in this complaint, this counterclaim? If it pleads false intentional conduct, there's no coverage. It doesn't matter what she has to plead at trial or whether she proves reckless disregard at trial. We look at the complaint to decide the duty to defend based on what's pleaded in the complaint, assume that will be true and that will be proven. You can't speculate what might happen at trial. And for him to say, look, maybe they'll prove reckless disregard at the trial. That's not what she pleaded. She pleaded it was intentional with actual malice. She pleaded either or, right? She said also actual disregard, reckless disregard for the falsity. So under the same theory, the same token, how can you say we don't have a duty to defend because she might prove actual malice? Because I think if you look at the four allegations that she pleads, she said it's done maliciously, it's done with actual malice. They did it intentionally, they meant to do it. It overweighs throwing in on the side, oh, it might have been reckless disregard. And it's like one of these things, we're going to give the plaintiff a, you know, you read the complaint, you know what she means. Now, you can't just throw in reckless disregard so you can say the insurance company might owe coverage in this case if she only proves reckless disregard. The odds are she's going to prove what she said, that this was all intentional. So the other thing he says, yes, when this exclusion applies to any defamation, and that should be clear. And that's where our arguments diverge from one another. If you look at the endorsement, it's at 101 in the record. It says this insurance does not apply to personal and advertising injury. Personal injury includes false arrest, malicious prosecution, libel, slander. It doesn't say this insurance does not apply to defamation that is not employment related. Any defamation is excluded. The employment relationship means that somehow this whole thing between the two people, the employer-employee, and she's an ex-employee, former employee, arose out of something to deal with employment before employment, during employment, or after. So it all comes up. We all understand the commercial general liability policy, CGL policy. That policy excludes, it provides coverage to the insured for third parties who sue the insured. Whatever it is some third party sues you. That excludes coverage for any employees. There's no coverage under CGL policy for any claims of employees. That's what this exclusion does in the personal injury coverage, which is part of the CGL. It takes out coverage for employment related things. So if the employee sues you, you don't get coverage. In this case, and we put it in the briefs, Hayley Manchin purchased employment related practices liability insurance. And that covers any employee or former employee's defamation. And we paid that. They got their full coverage that they paid for. So there was one other thing I wanted to say. It's kind of escaping my mind now. I might be running over. Okay, thank you. Ex-employee. She's, I mean, it pleads termination in paragraph 36. It's an ex-employee. And you have to read the whole thing. I mean, sometimes we look at things and we're trying to find an excuse to put something on the insurance company. When you do intentional conduct, like I said, I had some guy come and say he burned down his house because the guy wronged him. And he wanted insurance coverage. I said, well, you can't do that. And he can't do what he's doing. He doesn't like this lady. He wasn't trying to be nice to her. He thought she was wonderful. He hired her as a general manager. Now she doesn't play ball. I don't know if that's sexual harassment or whatever he was doing. She won't play ball. So now he fires her and he says, you're terrible. And I think there's not supposed to be coverage for that. And I don't think we should bend over, you know, and play word games, you know, trying to find a way for coverage. With that, I thank you for your attention. We ask for a reversal. Thank you. Thank you very much. We'll be taking the matter under advisement. And now we are adjourning for the day tomorrow morning. Thank you.